**UNITED STATES DISTRICT COURT**
**for the EASTERN DISTRICT OF NEW YORK**

PHH MORTGAGE CORPORATION,

Plaintiffs,

v.

MARIE LACARRIERE, UNITED STATES INTERNAL REVENUE SERVICE; NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE; NEW YORK CITY DEPARTMENT OF FINANCE,

Defendants.

Civil Action No. 25-cv-6583

**DEFENDANT MARIE LACARRIERE'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR APPOINTMENT OF A GUARDIAN AD LITEM**

Jacquelyn L. Griffin, Esq.
Brooklyn Legal Services
29 Albany Ave, 2nd Floor
Brooklyn, NY 11216
(718) 233-6442 (tel.)
(646) 859-8530 (fax)
*Attorneys for Defendant Marie Lacarriere*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................ ii

PRELIMINARY STATEMENT ............................................................ 1

ARGUMENT ............................................................ 1

I. The Court's Obligation to Appoint a Guardian *Ad Litem* for Incompetent Litigants.................. 1

II. Under New York State Law, Ms. Lacarriere Lacks Competency.......................................... 1–3

III. Ms. Lacarriere's Due Process Rights Are Not Threatened By This Appointment................ 3–5

IV. This Court Should Appoint Ms. Lacarriere's Daughter as Guardian *Ad Litem*..................... 5–6

CONCLUSION ............................................................ 6

# TABLE OF AUTHORITIES

**Cases**

*Bowen v. Rubin*, 213 F. Supp. 2d 220 (E.D.N.Y. 2001) ........................................................ *passim*

*Cruz v. Lee*, 2023 WL 7384639 (S.D.N.Y. Nov. 8, 2023)........................................................2, 4–5

*Ferelli v. River Manor Health Care Center*, 323 F.3d 196 (2003)..................................................4

*Levin v. Johnson & Johnson*, 2022 WL 17335669 (E.D.N.Y. Nov. 30, 2022) ..............................2

*Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642 (2d Cir. 1999)....................................................3

*New York Life Ins. Co. v. V.K.,* 184 Misc.2d 727, 735 (N.Y.Civ.Ct. 1999) ...................................2

*Roberts v. LifeMD Atl. Patient Med. Care, P.C.,* 2026 WL 392434 (S.D.N.Y. February 12, 2026) ..........................................................................................................................................2, 5

**Statutes**

Federal Rule of Civil Procedure § 17 ........................................................................... *passim*

N.Y. C.P.L.R. § 1201 .......................................................................................................2

## PRELIMINARY STATEMENT

Defendant Marie Lacarriere, by and through her attorneys, respectfully submits this memorandum of law in support of her motion for her daughter, Fritzgeralde Georges, to be appointed as her guardian *ad litem* in this action pursuant to Rule 17 of the Federal Rules of Civil Procedure. Ms. Lacarriere suffers from Alzheimer's disease and does not have the requisite level of competency required to defend herself.

## ARGUMENT

### I. The Court's Obligation to Appoint a Guardian *Ad Litem* for Incompetent Litigants

Rule 17(c) of the Federal Rules of Civil Procedure provides, in relevant part, that a minor or incompetent person may defend a lawsuit through a representative, such as a general guardian, a committee, a conservator, or a like fiduciary. *See* Fed. R. Civ. P. 17(c)(1). Where a minor or incompetent person has no such representative, "the court must appoint a guardian *ad litem*—or issue another appropriate order—to protect" such minor or incompetent person. See Fed. R. Civ. P. 17(c)(2). Additionally, an individual's capacity to be sued is determined by the law of such individual's domicile. Fed. R. Civ. P. 17(b)(1); *Bowen v. Rubin*, 213 F. Supp. 2d 220, 223 (E.D.N.Y. 2001) ("State law provides the controlling authority for determining whether an individual has capacity to sue on his own behalf."). As Ms. Lacarriere is a domiciled in New York, New York state law applies in the determination of her capacity to be sued. If this court determines that she is incompetent under New York state law, and she does not have a representative, as that term is defined in Rule 17(c), this court must appoint a guardian *ad litem*—or issue another appropriate order—for the protection of Ms. Lacarriere.

### II. Under New York State Law, Ms. Lacarriere Lacks Competency

Under New York state law, "[t]he party seeking appointment of a guardian must show by

a preponderance of the evidence that the individual's 'condition impedes her ability to protect her rights…'" *Bowen*, 213 F. Supp. 2d at 223 (quoting *New York Life Ins. Co. v. V.K.,* 184 Misc.2d 727, 735 (N.Y.Civ.Ct. 1999); *see also Roberts v. LifeMD Atl. Patient Med. Care, P.C.,* 2026 WL 392434 at *5, (S.D.N.Y. February 12, 2026) (quoting *Bowen*). Moreover, "it is well-settled that, under New York law, a guardian *ad litem* may be appointed by a court at any stage of an action in which an adult is incapable of adequately prosecuting or defending his rights, even when no formal adjudication of incompetence has been made." *Id*. (citing New York Civil Procedure Law and Rules Section 1201 which states that a "person shall appear by his guardian ad litem… if he is an adult incapable of adequately prosecuting or defending his rights."); *see also Cruz v. Lee*, 2023 WL 7384639, at *1 (S.D.N.Y. Nov. 8, 2023). In determining whether a litigant is incompetent, a court may rely on "verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." *Levin v. Johnson & Johnson*, No. 16CV06631JMAJMW, 2022 WL 17335669, at *2 (E.D.N.Y. Nov. 30, 2022).

The declarations provided in support of this motion provide ample evidence of Ms. Lacarriere's lack of competence. The letters from Ms. Lacarriere's treating physician clearly state her diagnosis, and there is a firsthand account from Fritzgeralde Georges, Ms. Lacarriere's daughter and the proposed guardian ad litem, detailing her mother's decline, as well as the care that she is now required to provide to her mother as the dementia progresses. *See* Georges Decl., ¶¶ 3–11; Exhs 1 and 2 to Georges Decl. Ms. Lacarriere's diagnosis of Alzheimer's disease is causing cognitive decline and behavioral symptoms, including inhibition and aggression. *Id*. The condition has rendered Ms. Lacarriere unable to work, manage her financial affairs, or care for herself independently. *Id*. at ¶¶ 9–10, 13. She can longer drive or cook, and generally

requires assistance with all of the daily tasks of living. *Id*. at ¶ 13. Alzheimer's is widely understood to be a degenerative disease; therefore, it is very likely that Ms. Lacarriere's condition will continue to deteriorate.

Because Ms. Lacarriere is not competent, due to her Alzheimer's disease, to defend herself in this action, and she has no representative, as that term is used in Rule 17(c), this court is obligated to take steps to protect her interests. It is also in the best interest of the Plaintiff and other adverse parties that a guardian *ad litem* be appointed for Ms. Lacarriere as it protects any adjudication from later being scrutinized or overturned due to Ms. Lacarriere's incompetency.

**III. Ms. Lacarriere's Due Process Rights Are Not Threatened By This Appointment**

In evaluating this request, the court must also consider that each "litigant possesses liberty interests in avoiding the stigma of being found incompetent, and in retaining personal control over the litigation, the Due Process Clause of the Fifth Amendment limits the district court's discretion with respect to the procedures used before appointing a guardian *ad litem*. To determine the amount of process due, the Court must weigh (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value of additional or different procedural safeguards; and (3) the government's interest." *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 651 (2d Cir. 1999) (internal citations omitted); *see also Bowen*, 213 F. Supp. 2d at 224.

Here, the private interest weighs in favor of appointment as Ms. Lacarriere has requested it. The cases where the private interest was viewed as a negative factor were those cases where a litigant of questionable competency was insisting on self-representation. *See, generally Neilson,* 199 F.3d 642 (plaintiff appeared *pro se* and defendants requested the appointment of a guardian ad litem after learning of plaintiff's several involuntary commitments to psychiatric hospitals).

Here, Ms. Lacarriere acknowledged that she has Alzheimer's and requested assistance to defend her interests in the foreclosure action. She has no desire to appear *pro se*, but rather recognizes her own limitations and that she cannot deal with this matter on her own. *See Cruz,* 2023 WL 7384639 at *2 (analyzing *Bowen*, saying "the [*Bowen*] court approvingly noted it was [the incapacitated person], through counsel, who were requesting the appointment, thus indicating their willingness to cede control over the litigation…").

The risk of erroneous deprivation is implicated here and is of the utmost importance—Ms. Lacarriere risks loss of her primary home. Also at risk, is the equity Ms. Lacarriere built in her the asset of her home after over two decades of mortgage payments. If Ms. Lacarriere, who is unable to adequately defend herself, is not appointed the protection of this procedural safeguard, she could face homelessness, as well as the loss of thousands of dollars in equity in her home, or the possibility of any settlement that could position her well for dignified care for the remaining years of her life.

The Court's interest in this matter is to protect any adjudication from scrutiny, which would be enhanced by making sure that Ms. Lacarriere's interests are adequately represented. Indeed, the court "is under a continuing obligation to monitor and assess the work of proposed guardians." *Bowen*, 213 F. Supp. 2d at 226 (citing *Nielson*, noting that litigants are empowered to seek to remove guardians and the court may reject a guardian's proposals). This Court is not required to hold a hearing regarding Ms. Lacarriere's competence, but may do so if it is unsatisfied with the evidence proffered with this motion. *Ferelli v. River Manor Health Care Center*, 323 F.3d 196, 203 (2d Cir. 2003) (finding that the district court judge was not required under Rule 17(c) or relevant precedent to conduct a competency hearing, and that both conducting a hearing or choosing not to conduct a hearing were within the judge's "wide

discretion in this area"); *Bowen*, 213 F. Supp. 2d at 225 ("It is true New York state courts have suggested that where a question of fact exists as to a party's competence to proceed on his own behalf, a hearing should be conducted to determine if a guardian should be appointed. However, courts in this Circuit have determined a hearing is not always necessary." (internal citations omitted)); *see also Cruz,* 2023 WL 7384639 at *1 ("When presented with a sufficiently robust record, a court may appoint a guardian *ad litem* without holding a Rule 17(c) hearing."); *Roberts,* 2026 WL 392434 at *5. "Formal hearings or submissions by doctors in addition to those made by a party's treating physician would appear to be absolute requisites *only where opposing counsel or the court seek to appoint a guardian or where there is a dearth of evidence regarding the competency of the party* to proceed without representation." *Bowen*, 213 F. Supp. 2d at 225 (emphasis supplied). However, as the court in *Bowen* notes, the added safeguard of the court's obligation in continually monitoring and assessing a guardianship minimizes the risk associated with an appointment that does not follow a formal hearing on competency. *Id.*; *see also Cruz,* 2023 WL 7384639 at *2. Here, the court is presented with diagnostic letters from Ms. Lacarriere's treating physician, as well as a statement from her sole caregiver describing Ms. Lacarriere's daily condition. Additionally, Ms. Lacarriere is making this request through counsel. *See Cruz,* 2023 WL 7384639 at *2 (noting that the *Bowen* court did not reach the third prong "likely because the request for appointment came from the [incapacitated party] themselves…")

**IV. This Court Should Appoint Ms. Lacarriere's Daughter as Guardian *Ad Litem***

The very nature of Ms. Lacarriere's diagnosis, which is characterized by cognitive decline, dictates that her condition impedes her ability to protect her legal rights. It is therefore necessary for the court to enter an order appointing a guardian *ad litem* or other order that it deems proper to protect Ms. Lacarriere.

The proposed guardian *ad litem*, Fritzgeralde Georges, Ms. Lacarriere's daughter, is the most appropriate choice. She currently lives with Ms. Lacarriere and is her sole caretaker. Ms. Georges manages her mother's medical needs, as well as all the financial affairs of the household. Due to her proximity, Ms. Georges is in the best position to discern her mother's needs and desires, and to act in her best interest. Ms. Georges has already been acting as a *de facto* fiduciary. This appointment will impose an affirmative duty on Ms. Georges to continue to act in the best interest of Ms. Lacarriere and to assist counsel with their representation of Ms. Lacarriere in this foreclosure action.

**CONCLUSION**

For the foregoing reasons, we request this court issue an order appointing Fritzgeralde Georges as guardian ad litem for Defendant Marie Lacarriere, and issue any other order this court deems appropriate to protect Ms. Lacarriere's interests and her ability to defend herself in this action.

Dated: June 15, 2026
Brooklyn, NY

By: ______________________________

Jacquelyn L. Griffin
Brooklyn Legal Services
29 Albany Ave, 2nd Floor
Brooklyn, NY 11216
(718) 233-6442 (tel.)
(646) 859-8530 (fax)
jgriffin@lsnyc.org